**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KRISTIE BELL and JOAN LUPPE,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) **2:12-cv-929** |
| **vs.** | ) |
| | ) |
| **CHESWICK GENERATING STATION,** | ) |
| **GENON POWER MIDWEST, L.P.,** | ) |
| | ) |
| **Defendant.** | ) |

<u>**MEMORANDUM OPINION AND ORDER OF COURT**</u>

Presently pending before the Court is the MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Doc. No. 6) with Brief in Support (Doc. No. 7) filed by Defendant Cheswick Generating Station, GenOn Power Midwest, L.P. ("GenOn" or "Defendant").[1]  Plaintiffs Kristie Bell and Joan Luppe, Putative Class Action Representatives, ("Plaintiffs") have filed a Brief in Opposition (Doc. No. 12), Defendant has filed a Reply Brief (Doc. No. 13), and Plaintiffs have filed a Sur-Reply Brief (Doc. No. 14).  Accordingly, the Motion is ripe for disposition.

<u>**Background**</u>

Plaintiffs commenced this lawsuit on April 19, 2012 by the filing of a "Class Action Complaint in Civil Action" in the Court of Common Pleas of Allegheny County in which they assert that emissions from Defendant's 570-megawatt coal-fired electrical generating facility, the Cheswick Generating Station, did and continues to cause damage to the property of Plaintiffs and

---

1.  In its Notice of Removal, Defendant states that "Cheswick Generating Station, GenOn Power Midwest, L.P." is not a legal entity.  Defendant nonetheless makes clear that that "Cheswick Generating Station" is "operated by Defendant GenOn, a limited partnership authorized to do business in Pennsylvania."  (Doc. No. 1 at 3, n. 1).  For present purposes, the Court will disregard the alleged (and easily amendable) misnomer in the caption and will proceed to address the merits of Defendant's Motion.

a putative class that they purport to represent.[2]   Plaintiffs aver that this putative class is comprised of at least one thousand and five hundred (1,500) individuals who reside or own residential property within a one-mile radius of the power plant in the Borough of Springdale, Allegheny County, Pennsylvania.

Defendant GenOn is a limited partnership organized under the laws of Delaware with its organizational headquarters and principle place of business located in Houston, Texas.   After GenOn was properly served, it timely removed the case to this Court based on diversity of citizenship.   Defendant has now moved the Court to dismiss the Complaint in its entirety under FED. R. CIV. P. 12(b)(6).

The Complaint alleges that Defendant's operation, maintenance, control and use of its facility has caused this putative class "similar property damage, the invasion by and inhalation of similar odors, and the deposit of similar particulate coal dust, including fly ash and particulates formed by gases and chemicals emitted by [Cheswick Generating Station]."[3]   Moreover, Plaintiffs claim that the atmospheric emissions fall upon their properties and leave a film of either black dust (*i.e.*, unburned coal particulate/unburned coal combustion byproduct) or white powder (*i.e.*, fly ash).   According to the Plaintiffs, those discharges require them to constantly clean their properties, preclude them from full use and enjoyment of their land, and "make [them] prisoners in their own homes."

Plaintiffs also aver that the operation of the facility by GenOn has been the subject of numerous and constant complaints of the residents of the surrounding neighborhood, by

2.  The Court notes that the exact time period of the alleged tortious conduct is unclear.  According to Plaintiffs, the alleged physical invasion onto Plaintiff's person and property occurred "on occasions too numerous to list."  *See* Pl's Compl. at ¶ 29 ("On occasions too numerous to list, Plaintiffs' person and property, including Plaintiffs' neighborhood, residences, and yards, were physically invaded by fallout, particulate, odor, and air contaminants.").
3.   Plaintiffs aver that the emissions include "coal combustion byproducts, fly ash, barium compounds, copper compounds, dioxin and dioxin-like compounds, hydrochloric acid (acid aerosols), hydrogen fluoride, lead compounds, manganese compounds, mercury compounds, sulfuric acid (acid aerosols), vanadium compounds, and zinc compounds."

organizations and interested persons within the area, and by "government action."  As Plaintiffs'

Complaint states, that dissention has not compelled GenOn to cease the improper operation of its

facility or to discontinue the ongoing invasion and trespass of their properties by damaging air

contaminants, odors, chemical and particulates.

The Complaint also asserts that Defendant knew of or allowed the improper construction

and operation of the facility and that GenOn continues to operate the power plant without proper

or best available technology or any proper air pollution control equipment, thereby allowing the

generating station's emissions to invade and damage the properties within a one-mile radius.

Likewise, the Complaint avers that GenOn "has installed limited technology to reduce or

eliminate emissions from the Cheswick Power Plant," and that "Defendant's Permit to Operate

does not allow [its] operations including emissions to damage private property."

Based on said allegations, Plaintiffs seek to recover compensatory and punitive damages

under four (4) common law tort theories: (I) nuisance; (II) negligence and recklessness; (III)

trespass; and (IV) strict liability.  At Counts One and Three, Plaintiffs also request that this Court

order injunctive relief.

## Standard of Review

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) challenges the legal sufficiently

of the complaint filed by plaintiff.  The United States Supreme Court has held that "[a] plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265,

286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all

reasonable inferences therefrom in favor of the plaintiff.  However, as the Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  The United States Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Thus, after *Iqbal,* a district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the Court must separate the factual and legal elements of the claim.  *Id.*  Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions."  *Id.* at 210-11.  Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  *Id.* at 211 (citing *Iqbal* 556 U.S. at 678).  The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

As a result, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss."  *Id.* at 211.  That is, "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible.  This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* at 210 (quoting *Iqbal,* 556 U.S. at 678).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion

4

to dismiss pursuant to FED. R. CIV. P. 12(b)(6) and the requirements of FED. R. CIV. P. 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). Rule 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Additionally, the United States Supreme Court did not abolish the FED. R. CIV. P. 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231(citing *Twombly*, 550 U.S. at 553).

## **Discussion**

Defendant advances multiple arguments in support of its Motion to Dismiss including (1) that Plaintiffs have not satisfied the pleading requirements under *Twombly* and *Iqbal*; (2) that the Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq.*, preempts Plaintiffs' common law claims; (3) that the Political Question Doctrine, *see Baker v. Carr*, 369 U.S. 186 (1962), bars the Plaintiffs' action as non-justiciable; and (4) that Plaintiff's strict liability count must fail because power generation is not an ultra-hazardous activity. Throughout its Motion, Defendant frames the Complaint as a request to have this Court regulate emission standards by asserting that the requested relief would undermine the scheme of the Clean Air Act.

In response, Plaintiffs dispute that characterization and challenge each argument advanced by Defendant with the exception that they "do not dispute Defendant's position as to [the] strict liability claim." In sum, Plaintiffs assert (1) that the Clean Air Act cannot preempt their common law claims because the savings clause in the citizen suit provision of the Clean Air

Act, 42 U.S.C. § 7604(e), preserves their right to bring suit for property damage; (2) that the Complaint "do[es] not speak to nor attack emission standards, and [it] has no relationship to emission standards"; (3) that the Political Question Doctrine is inapposite here because "[p]rotection can be 'judicially molded' in this case just as it is molded in any other action to protect property rights"; (4) that they only seek redress for property injuries allegedly traceable to Defendant's facility; and (5) that this case is "solely an action for damage to property, not an attempt to challenge the regulations of emissions in any way."  Defendant's Reply directly challenges two of those assertions.

First, Defendant argues that contrary to Plaintiffs' efforts to suggest otherwise, the Complaint explicitly asks and necessarily requires the Court to regulate Cheswick's emissions. Defendant highlights that throughout the Complaint, Plaintiffs refer to alleged permit violations on multiple occasions, including the "improper construction, operation, and maintenance" of Cheswick Generating Station, the "install[ation] of limited technology to reduce or eliminate emissions from the [facility]", and the continued operation of the power plant without the "best available technology or any proper air pollution control equipment."  Defendant posits that all of those activities are regulated by agency permits and attacks Plaintiffs requests for injunctive relief as an attempt to encroach on already-fixed emission limits and to undermine the discretion of permitting authorities.  Thus, as Defendant concludes, Plaintiffs' "assertion that their suit is not an effort to regulate emissions is pure fiction," and Plaintiff's reading of their Complaint is a "fruitless attempt to avoid the consequences of their pleading."

Second, GenOn disputes that the savings clause in the Clean Air Act's citizen suit provision, 42 U.S.C. § 7604(e), preserves their common law claims.  In support, Defendant notes that no part of the statute expressly preserves the state law nuisance and trespass suits and

attempts to distinguish two cases relied upon by Plaintiffs. *See* Doc. No. 12 at 2 (citing *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332 (6th Cir. 1989); *Gutierrez v. Mobil Oil Corp.*, 798 F. Supp. 1280 (W.D. Tex. 1992)). Defendant characterizes those cases as outdated authority on this matter where the court either reviewed a statute that prohibited court deference to state environmental agencies or encroached on agency standards with trepidation about the propriety of the "dual system" thus created. According to the Defendants, those agencies must now be afforded deference and that "duality" with regard to federal and state common law claims has been ended. *See* Doc. No. 13 at 4-5 (citing *Am. Elec. Power Co., Inc. v. Connecticut*, 131 S. Ct. 2527 (2011); *Native Vill. of Kivalina v. ExxonMobil Corp.*, 09-17490, -- F.3d --, 2012 WL 4215921 (9th Cir. Sept. 21, 2012); *N. Carolina, ex rel. Cooper v. Tennessee Valley Auth.*, 615 F.3d 291 (4th Cir. 2010) *cert. dismissed*, 132 S. Ct. 46 (2011); *United States v. EME Homer City Generation L.P.*, 823 F. Supp. 2d 274 (W.D. Pa. 2011).

Much like Defendant, Plaintiffs' surreply endeavors to distinguish the authority on which it relies. More specifically, Plaintiffs explain that *American Electric Power Co.* and *Kivalina* primarily address the displacement of federal common law for public nuisance actions and the preemptive effect of the Clean Air Act on such claims. Thus, as Plaintiffs argue, those decisions have no relationship to their Complaint.

The surreply also addresses the assertions made by Defendant that the Complaint impermissibly seeks and requires this Court to regulate emissions. Plaintiffs claim that through no averments in the Complaint do they either request a change in emissions standards, comment unfavorably upon Defendant's emissions standards, or seek a change of technology in GenOn's operation. Plaintiffs further admit that "Defendant's operation and Defendant's air pollution

controls, or the lack thereof, are the business of Defendant and the Environmental Protection Agency, not the Plaintiffs" and that Defendant operates pursuant to a Title V Operating Permit issued by the EPA, which may only be changed by that Agency.  Plaintiffs do note, however, that they refuse to recognize that the Operating Permit "absolves [GenOn] of responsibility for damages caused to private property by [its] allowed emissions."  As Plaintiffs conclude, "[t]he Defendant is allowed to emit whatever millions of pounds of emissions the [EPA] has decided for Defendant but Defendant is not allowed by those emissions granted [to] it by the [EPA] to damage private property."

Finally, Plaintiffs' surreply reinforces their belief that the language of the Clean Air Act's savings clause necessarily permits the present suit and attempts to clarify that they do not seek to enjoin the operations of the Cheswick Generating Station.  The only injunctive relief that Plaintiffs could seek, according to their filing, is a "request of this court to consider an Order to Defendant to clean the property of Plaintiffs from the particulate which continuously falls upon Plaintiffs' properties from Defendant's smokestacks."  Plaintiffs offer to remove any reference to injunctive relief from their Complaint to satisfy Defendant.

After careful consideration of the motion, the filings in support and opposition thereto, and the relevant case law, the Court finds and rules that Plaintiffs' Complaint does not sufficiently state a plausible claim for relief in order to survive.  Thus, for the reasons that follow, Defendant's Motion will be granted in its entirety.

## A. **The Complaint**

Much like all coal-fired electrical generating facilities, federal, state, and local authorities extensively regulate and comprehensively oversee the operations of the Cheswick Generating Station.  The United States Environmental Protection Agency ("EPA"), the Pennsylvania

Department of Environmental Protection ("DEP"), and the Allegheny County Health Department ("ACHD") comprise the administrative bodies that are primarily responsible for defining environmental emission standards and policing compliance with the Clean Air Act at the power plant.

The standards and regulations with which the facility must comply under the Clean Air Act are extensive. For example, the Clean Air Act directed the EPA to promulgate National Ambient Air Quality Standards ("NAAQS") for sulfur dioxide, particulate matter, ozone, nitrogen dioxide, carbon monoxide and lead and it directed the states to prepare State Implementation Plans ("SIPs") for federal approval in order to achieve the NAAQS; states issue operating permits for major operating sources under Title V of the Clean Air Act; and the Prevention of Significant Deterioration ("PSD") program requires, *inter alia*, that a proposed facility is subject to the best available control technology. *See generally EME Homer City Generation L.P.*, 823 F. Supp. 2d at 278-283 (providing an overview of various air quality standards promulgated pursuant to the Clean Air Act for federal, state, and local implementation). "Together, these laws and regulations form a system that seeks to keep air pollutants at or below safe levels." *N. Carolina, ex rel. Cooper*, 615 F.3d at 296.

Pursuant to many of those regulations, the air emissions at the facility operated by the Defendant are governed by an ACHD permit. As GenOn highlights, its permit imposes many operational requirements which provide, in relevant part, as follows:

> GenOn may not "operate . . . any source in such manner that emissions of malodorous matter from such source are perceptible beyond the property line." *Id.* § IV.3. GenOn must "take all reasonable actions to prevent fugitive air contaminants from becoming airborne." *Id.* § IV.19. GenOn may not "conduct . . . any materials handling operation in such manner that emissions from such operation are visible at or beyond the property line." *Id.* § IV.4; *see also id.* §§ V.D.1.a, -E.1.a, -F.1.a (restricting visible fugitive emissions from coal handling and storage operations, ash handling, processing, and storage operations, and

vehicular traffic).  GenOn must ensure that "[a]ll air pollution control equipment"
is "properly installed, maintained, and operated . . . ." *Id.* § IV.5.  GenOn may not
"operate any source . . . in such manner that emissions from such source . . .
[m]ay reasonably be anticipated to endanger the public health, safety, or welfare."
*Id.* § III.1(c).

Doc. No. 7 at 6 (citing Doc. No. 7-1 (ACHD Title V Operating Permit and Federally Enforceable

State Operating Permit)) (alterations in original).  The ACHD permit also imposes limits on the

emission of various particulate matter, gasses, chemical, and compounds from coal combustion.

   Here, Plaintiffs' Brief in Opposition and Surreply Brief persistently submit the claims

that their Complaint does not speak to or attack emission standards, has no relationship to

emission standards, and "has no relationship to Federal Law at all."  The Court cannot agree and

notes that it is black letter law that when ruling on a motion to dismiss, the Court is constrained

to look only at the allegations of the Complaint.  *See, e.g., Lay v. Hixon*, CIVA 09-0075-WS-M,

2009 WL 825814 (S.D. Ala. Mar. 26, 2009) (noting "it is black-letter law that a court's review

on a motion to dismiss is limited to the four corners of the complaint") (citation and quotation

marks omitted); *see also Snyder v. Baxter Healthcare, Inc.*, 393 F. App'x 905, 907 n.4 (3d Cir.

2010) ("[A] motion to dismiss attacks claims contained by the four corners of the complaint.").

   A review of the Complaint reveals that the allegations of Plaintiffs, as pleaded, assert

various permit violations and seek a judicial examination of matters governed by the regulating

administrative bodies.  The Court highlights the following averments from the Complaint as

prime examples:

   ¶ 21. Defendant's operation, maintenance, control and use of the coal fired
   electrical facility has caused to the Plaintiff Class Representative and all others
   similarly situated who live or own real residential property within the one (1) mile
   diameter described similar property damages, the invasion by and inhalation of
   similar odors, the deposit of similar particulate coal dust, including fly ash, and
   particulates formed by gases and chemical emitted by Defendant, and thereby
   caused similar damages to the personal and real property of the Class

representative and all others similarly situated within the one (1) mile radius of the Defendant's facility.

¶ 22  The operation by Defendant of its coal fired electrical generation facility has been the subject of numerous and constant complaints . . . which has failed to compel Defendant to cease the improper operation of its facility . . . .

¶ 26.  Defendant has installed limited technology to reduce or eliminate emissions from the Cheswick Power Plant.

¶ 37.  It is Plaintiffs' information and belief that Defendant knew of the improper construction, and operation of the facility . . . or allowed the improper construction, or maintenance and operation of the facility, of the Cheswick coal fired power plant, which allows discharge of chemicals, odor, air pollutants, and particulates into Plaintiffs' neighborhood, and exercises exclusive control and[/]or ownership over the facility.

¶ 38.  Defendant knowingly continues to operate the Cheswick coal fired electrical generation plant without proper or best available technology, or any proper air pollution control equipment, and thereby knowingly allows Plaintiffs' properties within one (1) mile of the facility to be invaded and damaged by chemicals, air pollutants, odors, and particulates emitted by the facility thereby causing damage to the Plaintiffs' properties.

¶ 39.  As a direct and proximate result of Defendant's negligence in constructing and[/]or engineering and designing and[/]or operation and[/]or maintenance of the facility, Plaintiffs' person and[/]or property have been invaded by particulates and contaminants.

Contrary to Plaintiffs' assertions, the Court finds that those averments are not merely "informational only;" rather, those paragraphs form the basis for their suit as pled.

While Plaintiffs' Complaint does continue beyond those paragraphs in which they allege the four common law violations, the averments at each count are little more than formulaic recitations of the elements to each cause of action.  That is, after the Court disregards all of the legal conclusions at each paragraph in Counts I-IV, little remains that would support a showing of a plausible claim for relief.  Indeed, among those averments that do remain are additional allegations that concern the regulation of emissions and requests for injunctive relief.  *See*, *e.g.*, Pl.'s Comp. at ¶ 46 ("Defendant by and through current technological process and current

engineering standards could and should preclude the discharge of any particulates and extra hazardous substances onto Plaintiffs' properties.").

Thus, the Court reads the Plaintiffs' Complaint, including its common law claims, as necessarily speaking to and attacking emission standards. The only issue that remains is whether the Clean Air Act preempts the state common law claims or whether the savings clause in the citizen suit provision allow those claims to survive.

### B. <u>Preemption</u>

Recently, some courts have precluded common law claims that have encroached on or directly interfered with the provisions of the Clean Air Act. *See, e.g.*, *Am. Elec. Power Co., Inc.*, 131 S. Ct. at 2538-39; *N. Carolina, ex rel. Cooper*, 615 F.3d at 304-05. In *American Electric Power Co. v. Connecticut*, the United States Supreme Court held that the Clean Air Act preempted federal common law nuisance claims as a means to curb emissions from power plants. 131 S. Ct. at 2540. In that case, the Court explained that:

> It is altogether fitting that Congress designated an expert agency, here, EPA, as best suited to serve as primary regulator of greenhouse gas emissions. The expert agency is surely better equipped to do the job than individual district judges issuing ad hoc, case-by-case injunctions. Federal judges lack the scientific, economic, and technological resources an agency can utilize in coping with issues of this order

*Id.* at 2539-40. While the Supreme Court did not specifically rule on the availability of a state law nuisance claim, it noted that the issue would turn "on the preemptive effect of the federal Act." *Id.* at 2540.

In *North Carolina, ex rel. Cooper v. Tennessee Valley Authority*, the United States Court of Appeals for the Fourth Circuit rejected a very similar state law public nuisance claim against power plants. 15 F.3d at 303. The Court held that the public nuisance claims were preempted because they threaten to scuttle the comprehensive regulatory and permitting regime that has

developed over several decades.  The Court explained its preemption analysis, in pertinent part as follows:

> A field of state law, here public nuisance law, would be preempted if a scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.  Here, of course, the role envisioned for the states has been made clear.  Where Congress has chosen to grant states an extensive role in the Clean Air Act's regulatory regime through the SIP and permitting process, field and conflict preemption principles caution at a minimum against according states a wholly different role and allowing state nuisance law to contradict joint federal-state rules so meticulously drafted.

*Id.* at 303 (citations, quotation marks and alterations in original omitted).  District Courts have also preempted other common law claims based on the Clean Air Act's preemptive impact.

In *Comer v. Murphy Oil USA, Inc.*, the court dismissed a common law property damage suit in which the plaintiffs asserted public and private nuisance, trespass, and negligence claims against numerous oil, coal, electric, and chemical companies.  839 F. Supp. 2d 849, 865 (S.D. Miss. 2012).  The court explained that as in *American Electric Power Co.*, the plaintiffs were similarly asking the court to make determinations regarding the reasonableness of the defendants' emissions—a determination that the Supreme Court decided had been entrusted to the EPA by Congress.  *Id.*  After the court noted that the judgment sought by the plaintiffs (*i.e.*, a judgment that the defendants' emissions were unreasonable) could not be reconciled with the decision-making scheme enacted by Congress, it held that the entire lawsuit was displaced by the Clean Air Act.  *Id.*

Here, the Clean Air Act represents a comprehensive statutory and regulatory scheme that establishes the standards with which the Cheswick Generating Station must abide.  Plaintiffs' claims impermissibly encroach on and interfere with that regulatory scheme.  The allegations throughout Plaintiff's Complaint, as previously highlighted, implore this Court to weigh in on matters regulated by agency permits, governed by the ACHD, and imposed through the

preconstruction-permit process.  However, the specific controls, equipment, and processes to which the Cheswick Generating Station is subject to are implemented and enforced by the EPA, DEP, and ACHD.  Plaintiff's Complaint, as pled, would necessarily require this Court to engraft or alter those standards, and judicial interference in this regulatory realm is neither warranted nor permitted.  To conclude otherwise would require an impermissible determination regarding the reasonableness of an otherwise government regulated activity.

### C.  Savings Clause

Finally, the savings clause of the Clean Air Act does not alter this analysis.  The savings clause provides, in pertinent part, that "[n]othing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency)."  42 U.S.C.A. § 7604(e).

In *North Carolina, ex rel. Cooper*, the court noted, but found unpersuasive, this provision.  15 F.3d at 303-04.  There, the court highlighted *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987) where the savings clause of the Clean Water Act, which is similar to that in the Clean Air Act, was at issue.  *Id.* (citation omitted).  The court explained that the Supreme Court "indicated that the clause was ambiguous as to which state actions were preserved" and ultimately did not permit the states to rely on the clause to impose separate discharge standards on a single point source because it would "undermine [the] carefully drawn statute through a general savings clause."  *Id.* at 304 (citations omitted); *c.f. AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) ("As we have said, a federal statute's saving clause cannot in reason be construed as allowing a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act.") (citations, alterations, and quotation

marks omitted).  The *Ouellette* Court concluded that the inevitable result of allowing the states to rely on the savings clause for that purpose "would be a serious interference with the achievement of the full purposes and objectives of Congress."  *North Carolina, ex rel. Cooper*, 15 F.3d at 304 (citation omitted).

Based on the extensive and comprehensive regulations promulgated by the administrative bodies which govern air emissions from electrical generation facilities, the Court finds and rules that to permit the common law claims would be inconsistent with the dictates of the Clean Air Act.  To enforce any of the emissions standards of or limitations on the Cheswick Generating Station, the Clean Air Act provides Plaintiffs multiple avenues for redress.  First, the Act allows for so-called "citizen suits," *see* 42 U.S.C. § 7604, which permits the filing of civil suits in district courts against persons who violate various promulgations of the Act or orders issued by the EPA or states.  *See Abuhouran v. Kaiserkane, Inc.*, 10-6609 NLH/KMW, 2011 WL 6372208*4 (D.N.J. Dec. 19, 2011) (citing *Delaware Valley Citizens Council for Clean Air v. Davis*, 932 F.2d 256, 264 (3d Cir.1991)).  However, "as multiple federal courts have recognized, the Clean Air Act does not authorize a private cause of action for compensatory damages for alleged violations of the Act."  *Id.* (citations omitted).  Second, the EPA also "retains the power to inspect and monitor regulated sources, to impose administrative penalties for noncompliance, and to commence civil actions against polluters in federal court," but "may delegate implementation and enforcement authority to the States."  *Am. Elec. Power Co., Inc.*, 131 S. Ct. at 2538.  Thus, the recovery sought—monetary damages and injunctive relief—is simply inconsistent with those provisions; the Clean Air Act already provides a means to seek limits on emissions, and the Court will not create a parallel track.

Accordingly, Defendant's MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Doc. No. 6) will be **GRANTED** in its entirety.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KRISTIE BELL and JOAN LUPPE,     )
     )
     Plaintiffs,     )
     )  **2:12-cv-929**
     vs.     )
     )
CHESWICK GENERATING STATION,     )
GENON POWER MIDWEST, L.P.,     )
     )
     Defendant.     )

## ORDER OF COURT

AND NOW, this 12th day of October, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the Defendant's MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, filed at Doc. No. 6, is **GRANTED.**  The Clerk shall docket this case closed.


BY THE COURT:
s/  Terrence F. McVerry
United States District Court Judge


cc:   **James E. DePasquale, Esquire**
     Email: jim.depasquale@verizon.net

     **Paul K. Stockman, Esquire**
     Email: pstockman@mcguirewoods.com

     **Scott C. Oostdyk**
     Email: soostdyk@mcguirewoods.com